CASE 23—EQUITY—NOVEMBER 20, 1880.

# Smith, &c., v. Brannin, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. Every question presented upon an appeal must be taken to have been disposed of by the decision upon the appeal, unless it be expressly left open for further litigation.
2. When an appeal presents two or more questions, and the members of this court are equally divided upon one or more of them, and the judgment is reversed upon other points where there is agreement, the opinion of the judges who agree with the court below in regard to the questions as to which an equal division exists, becomes the law of the case as to such questions.
3. The court below and this court, in the further progress of the case, are bound by it as though all the judges had concurred with the lower court.

HARLAN & WILSON, D. W. ARMSTRONG, AND W. REINECKE FOR APPELLANTS.

The division of this court upon the former hearing operates as an affirmance as to all questions upon which the division existed. The judgment of the vice chancellor, therefore, stands as the law of this case upon all questions upon which the court differed. (Gen. Stat., 279; Brannin v. Smith, MS. Opin., 1875; Commonwealth

Smith, &c., v. Brannin, &c.

v. Beaumarchais, 3 Cal., 150; Phillips v. Williams, 3 Grattan, 264; Brown v. Crow's heirs, Hardin, 446; McLean v. Nixon, 18 B. Mon., 774; Mason v. Mason, 5 Bush, 193; Macklin v. Crutcher, 6 *Ib.*, 401.)

CALDWELL & HARWOOD FOR APPELLANT.

We hold that the opinion of the two judges (Peters and Pryor) who concurred with the vice chancellor on the former appeal in deciding that, under the several contracts between these parties, the appellants were joint owners with Hughes in the cotton bought by appellees, and that appellees were therefore liable to them, settled the law of this case. (Phillips v. Williams, 5 Grattan, 264.)

BARR, GOODLOE & HUMPHREY AND W. LINDSAY FOR APPELLEES.

The opinion of Judges Peters and Pryor is equal to that of Judges Cofer and Lindsay, and they are equal to each other. Thus the law of the case was at large, so far as the lower court was concerned, and the mandate so treats it, except in a certain event. Phillips v. Williams is not in conflict with this view.

CHIEF JUSTICE COFER DELIVERED THE OPINION OF THE COURT.

When this case was before this court on a former appeal, it appeared that in December, 1865, A. B. Montgomery and John Wesley Hughes entered into a copartnership for the purpose of growing a crop of corn and cotton in the year 1866, on the plantation of the former, situated in Washington county, Mississippi known as the "Swift Water" plantation.

That contract provided, among other things, that Hughes should furnish the means for cultivating and securing the crop, and should advance to Montgomery the sum of $10,000. He was to be reimbursed out of the crop for his outlay in its production, and the residue was to be equally divided between them. The money advanced to Montgomery was to be repaid out of his share of the crop, and after the outlay and advances were paid, each was to control his share as he desired.

Soon after that contract was entered into, Hughes came to Kentucky for the purpose of raising money to enable

him to comply with his part of its terms. He exhibited it to the appellants, Isaac W. Smith, Billy Smith, Jacob S. Smith, and John Woodson Hughes, and entered into contracts with them, whereby they agreed to furnish him the following sums of money: Isaac W. Smith, $7,500; Billy Smith, $3,750; Jacob S. Smith, $2,500; and John Woodson Hughes, $5,000, making a total $18,750. Isaac M. Smith also agreed to and did furnish $3,750, but withdrew under a stipulation in the contract permitting him to do so, and received the note of John Wesley Hughes, with John Woodson Hughes as surety, for the amount advanced by him, and no further notice need be taken of him.

The money was advanced, as the contract recites, in consideration of an interest in the contract between Montgomery and John Wesley Hughes, whose whole interest in the contract was estimated at $45,000, and those advancing money were to receive an interest in proportion to the money advanced by them respectively.

The greater part of the cotton grown on Swift Water plantation was shipped to and sold by Brannin & Summers, cotton factors, at New Orleans. In November, 1868, Isaac W. Smith brought this suit in the Louisville chancery court against John Wesley Hughes, John Woodson Hughes, Isaac W. Smith, Billy Smith, A. B. Montgomery, and the firm of Brannin & Summers, and Jacob S. Smith was subsequently made a party. The plaintiff claimed that he and his associates, by their contract with John Wesley Hughes, became part owners of the cotton in proportion to their respective advances, and that Brannin & Summers had wrongfully applied the proceeds of the sale of the cotton to the payment of a debt due them by John Wesley Hughes, and sought to recover his proportion of the price of the cotton.

Smith, &c., v. Brannin, &c.

Jacob S. Smith filed an answer, in which he adopted the allegations of the petition, and, making it a cross-petition against Brannin & Summers, sought judgment for his interest also. Billy Smith and John Woodson Hughes did not answer.

Brannin & Summers denied that Isaac W. Smith and his associates in the contract with John Wesley Hughes had any interest in the cotton; but on final hearing the vice chancellor held otherwise, and rendered judgment in favor of all the associates against Brannin & Summers for their respective proportions of the proceeds of the cotton. From that judgment Brannin & Summers appealed.

Upon hearing the appeal, the members of this court were equally divided in opinion upon the question whether the Smiths and John Woodson Hughes had any interest in the cotton. Chief Justice Peters and Judge Pryor were of the opinion that the contract between them and John Wesley Hughes made them partners with him, and that the terms of that contract were known and assented to by Montgomery, and that they thus became partners with him also, he owning a one half interest, and John Wesley Hughes and the Smiths and John Woodson Hughes owning the other half, and that Montgomery, having transferred or released all his interest to John Wesley Hughes and the Smiths and John Woodson Hughes, Isaac W. Smith and Jacob S. Smith were entitled to recover against Brannin & Summers their respective interests in the proceeds of the cotton.

Judges Lindsay and Cofer were of the opinion that the contracts gave the Smiths and John Woodson Hughes no interest whatever in the cotton, and that their only right was to an account with John Wesley Hughes, and hence

that the petition and cross-petition should have been dismissed.

But the whole court concurred in reversing the judgment in favor of Billy Smith and John Woodson Hughes, because not authorized by the pleadings and not asked for by them; and also concurred in reversing the judgment in favor of Isaac W. Smith and Billy Smith for some minor errors, and in the following mandate:

"It is, therefore, considered that said judgment be reversed, and cause remanded, with directions to the court below to . . . . give the parties leave to take additional proof, if desired. If no other proof is taken, judgment will be rendered for the two appellees, I. W. Smith and Jacob Smith, for their interest, with the original judgment modified as herein directed, by giving Brannin & Summers their proper credits."

On the return of the cause Brannin & Summers, without any objection being made thereto, filed an amended answer, in which they alleged that they had furnished supplies to the Swift Water plantation in 1866 to an amount exceeding the proceeds of the cotton in contest remaining in their hands; and that they had a right to retain the money to pay for the supplies; and that the Smiths and John Woodson Hughes had consented that the cotton might be so applied.

Billy Smith and John Woodson Hughes answered, and, making their answers cross-petitions against Brannin & Summers, prayed judgment for their interest in the proceeds of the cotton. To this claim Brannin & Summers made the same defense as to the claim of Isaac W. and Jacob S. Smith, and in addition pleaded the statute of limitations.

Additional evidence was taken on all the issues of fact presented by the pleadings, and on final hearing a special

chancellor, to whom the cause was submitted, dismissed the original and all the cross-petitions, and the Smiths and John Woodson Hughes have appealed.

The first question presented for our consideration is, what was the effect of the equal division in this court upon questions presented by the former appeal?

It is contended by the appellees, that inasmuch as the mandate directed judgment to be entered for Isaac W. and Jacob S. Smith in the event that no additional evidence was taken, and additional evidence was introduced, the case was put at large, and all questions were open for decision as if the case had never been before this court; and this seems to have been the opinion of the learned special chancellor.

We have not been able to concur in this view.

Every question presented upon an appeal must thereafter be taken to have been disposed of by the decision on the appeal (Davis v. McCorkle, 14 Bush, 746), unless it be expressly left open for further litigation; and when the case presents two or more questions, and the members of this court are equally divided in opinion upon one or more of such questions, and the judgment is reversed upon other points upon which all agree, the opinion of the judges who agree with the court below upon the questions about which there is an equal division here, becomes the law of the case as to those questions, and is binding upon the court below and upon this court in the further progress of the case, to the same extent as if all the judges had concurred with the court below upon those questions.

Whether the appellants had an interest in the cotton as partners, or as part owners, was a question directly in issue before the vice chancellor, and in this court on the appeal from his judgment.  The vice chancellor decided they had

such interest. This court was divided on that question; and as a majority did not concur in reversing upon that point, it necessarily follows that that part of his decision was affirmed, unless expressly left open for further litigation, or else it cannot be true that all the questions presented by the appeal were disposed of by the final decision of this court in the case.

Whether these appellants had an interest in the cotton depended, first, upon the construction of the writings between them and John Wesley Hughes, and between John Wesley Hughes and Montgomery; and secondly, upon the question of fact whether Montgomery had knowledge of the nature and terms of the contract between John Wesley Hughes and the appellants, and consented, either expressly or by acquiescence, to receive them as partners or part owners with himself and John Wesley Hughes.

This court, by the concurrence of all the judges, in allowing further evidence to be introduced without restriction as to the subjects to which such leave was extended, left every question of fact to further litigation; and additional evidence having been taken as to Montgomery's knowledge of the terms of the contract between John Wesley Hughes and the appellants, and his consent to accept the latter as his partners, that question was open to be decided in the court below upon all the evidence in the record at the last hearing, and is open for review in this court.

But as far as the question depended upon a proper construction of the writings, it was not left open; and whatever may be the opinion of the members of this court, as now constituted, as to the proper construction of these writings, we are as much bound by the opinion of the Chief Justice and Judge Pryor on the former appeal as if that opinion had been concurred in by the whole court.